**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0653-19T3

DEMETRIOS PAPADOGONAS,

    Plaintiff-Appellant,

v.

DR. DEREK S. LEE,

    Defendant-Respondent

and

MEADOWLANDS HOSPITAL
MEDICAL CENTER, INC.,

    Defendant.

_____

        Submitted December 15, 2020 – Decided January 8, 2021

        Before Judges Haas and Natali.

        On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3363-17.

        Robert A. Skoblar, attorney for appellant.

Ruprecht Hart Weeks & Ricciardulli, LLP, attorneys
for respondent (Michael R. Ricciardulli, of counsel and
on the brief; Meghan E. Walsh, on the brief).

PER CURIAM

Plaintiff Demetrios Papadogonas appeals from the Law Division's September 3, 2019 order granting defendant Dr. Derek S. Lee's motion for summary judgment and dismissing plaintiff's medical malpractice complaint against defendant with prejudice. Plaintiff also challenges a second order issued on September 3, that granted defendant's motion to quash a subpoena plaintiff served upon Newark Beth Israel Medical Center seeking defendant's disciplinary records while employed at that institution. We affirm.

While swimming in Greece on September 10, 2015, plaintiff suffered a left tympanic membrane perforation, which is an eardrum rupture. Plaintiff sought medical treatment in Greece and was treated with antibiotics and ear drops. After he returned to New Jersey, plaintiff saw an ENT specialist[1] about his left ear and was prescribed a regimen of antibiotics. Soon after, plaintiff developed a fever, cough, and chest pain. On September 21, plaintiff went to

---

[1] An ENT specialist is a physician who specializes in the treatment of diseases and disorders that affect the ear, nose, and throat.

the Meadowlands Hospital Medical Center and was admitted to the intensive care unit and treated with a broad spectrum of antibiotics.

The next day, defendant examined plaintiff. Defendant diagnosed plaintiff with the following conditions: (1) eustachian tube dysfunction, (2) nasal septal fracture, deviation, (3) nasal septal perforation, (4) inferior turbinate hypertrophy, (5) collapsed nasal valves, and (6) chronic otitis media. Defendant recommended that plaintiff undergo two surgeries, a nasal septal perforation repair and a left tympanomastoidectomy[2] to repair a perforation of the tympanic membrane.

On September 23, defendant performed surgery to repair plaintiff's septal perforation. Two days later, defendant performed a left tympanomastoidectomy on plaintiff.

After plaintiff was discharged from the hospital, he complained of hearing loss in his left ear. He soon began receiving treatment from Michael Katz, M.D., an ENT specialist. Dr. Katz examined plaintiff and found he was still suffering

---

[2] A tympanomastoidectomy is the performance of a tympanoplasty and mastoidectomy together. Mastoidectomy surgery removes diseased air cells from the mastoid bone. During a tympanoplasty, the surgeon will graft the tympanic membrane (eardrum) and reconstruct the middle ear in order to retain or restore hearing.

A-0653-19T3

from a tympanic membrane perforation.  On July 8, 2016, Dr. Katz performed a left tympanostomy on plaintiff, but his hearing did not improve.

Plaintiff eventually filed a medical malpractice complaint against defendant and alleged that defendant deviated from accepted standards of medical care while performing the two surgeries and caused his hearing loss. To sustain a prima facie cause of action for medical professional liability negligence, a plaintiff must establish by expert testimony the relevant standard of care, a breach of that standard of care, and a causal connection between the breach and the plaintiff's injuries.  Rosenberg v. Tavorath, 352 N.J. Super. 385, 399 (App. Div. 2002).  "Absent competent expert proof of these three elements, the case is not sufficient for determination by the jury."  Ibid. (citations omitted).

In an attempt to meet this requirement, plaintiff retained Dr. Katz, who rendered two expert reports identifying the standard of care applicable to the surgeries and defendant's alleged deviations from that standard.[3]  However, the first report Dr. Katz issued on June 15, 2017 did not address the causal connection between defendant's alleged breach of the standard of care and plaintiff's injuries in any way, shape, or form.

_____

[3]  Contrary to plaintiff's assertion in response to defendant's motion for summary judgment, Dr. Katz never opined that the surgeries defendant performed were "unnecessary."

A-0653-19T3

In his second report, rendered on August 8, 2018, Dr. Katz stated that "[h]earing loss secondary to [the] surgery [defendant performed on plaintiff's left ear] is a well[-]known risk and complication and can be caused by multiple factors including damage to the ossicular chain, failure to the repair of the perforation and damage to the inner ear." Dr. Katz also opined that "[i]t is not possible to determine whether [plaintiff's] permanent hearing loss was a result of the infection/initial trauma or the resultant surgery without a preoperative hearing test to which we can compare." No preoperative hearing test was performed in this case. At a subsequent deposition, Dr. Katz again made clear that he was unable to "offer any opinions on causation" and that the opinions he did render "were limited to the issue of deviation[.]"

As the matter progressed toward summary judgment, plaintiff served a subpoena upon Newark Beth Israel Medical Center where defendant used to work. Plaintiff had learned that defendant was suspended from that institution in the past because he had a dispute with a patient over the payment of a bill and he wanted to obtain copies of defendant's disciplinary records. Defendant filed a motion to quash the subpoena, arguing that the records were not relevant to the medical malpractice issue before the court.

A-0653-19T3

After conducting oral argument, Judge Kimberly Espinales-Maloney rendered a comprehensive written opinion on September 3, 2019 granting defendant's motion for summary judgment and his motion to quash the subpoena seeking his disciplinary records. In granting summary judgment to defendant, the judge concluded that plaintiff's expert, Dr. Katz, never opined that any of defendant's deviations from the standard of care actually caused the hearing deficit. As Judge Espinales-Maloney explained:

> Here, the record shows that plaintiff has retained Dr. Katz, a board certified [otolaryngologist], as his expert. Dr. Katz has authored two expert reports, which set forth deviations from the standard of care on the part of Dr. Lee. Specifically, Dr. Katz has three opinions regarding deviation: 1) that the tympanoplasty was performed prematurely, without giving the eardrum a chance to heal spontaneously; 2) performance of a mastoidectomy on the patient without evidence of coalescent mastoiditis[;] and 3) performance of the septoplasty during the hospitalization. However, a review of both reports demonstrates that Dr. Katz does not provide any causation opinion connecting the alleged deviations to plaintiff's claimed damages. The reports make no mention of proximate causation. Moreover, during Dr. Katz deposition[,] he testified that his initial report did not contain any opinions on causation. Further, Dr. Katz admitted at his deposition that without having seen the results of a hearing test performed prior to Dr. Lee's ear surgery, he could not provide an opinion as to whether plaintiff's hearing loss is the result of negligence on the part of Dr. Lee. Therefore, plaintiff cannot meet his burden of proving causation through expert medical testimony as required

6

by case law.  Since plaintiff has not a made prima facie showing of negligence, specifically the proximate cause prong—this court finds plaintiff's [c]omplaint must be dismissed with prejudice.  Therefore, this court will grant defendant's [motion for summary judgment].

The judge also granted defendant's motion to quash plaintiff's subpoena on Newark Beth Israel Medical Center.  In so ruling, the judge stated:

Here, this court finds the subpoenas issued to Newark Beth Israel Medical Center are unreasonable and will not lead to the discovery of admissible evidence.  This court finds the information sought by plaintiff is irrelevant to the issues in this matter.  Specifically, plaintiff is pursuing a negligence claim against Dr. Lee.  This court does not find documents relating to Dr. Lee's suspensions from a different hospital to be relevant to the allegations of negligence in this case.  Pursuant to [N.J.R.E. 401], relevant evidence is defined as "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action."  Here, this court does not find that Dr. Lee's prior suspensions will prove or disprove the negligence claims alleged by plaintiff.  Moreover, plaintiff argues this case is about performing unnecessary surgeries for money.  This court does not agree with [plaintiff's] assertion regarding the subject matter of the case.  A review of the [c]omplaint indicates the case is a negligence/medical malpractice case.  Thus, this court does not find Dr. Lee's suspensions to be relevant.  Lastly, this court agrees with defendant that Dr. Lee's character is not an issue nor does plaintiff . . . have a right to impeach Dr. Lee's credibility.  Whether [sic] Dr. Lee's testimony regarding insurance payments has no bearing on the issues in this matter. Additionally, plaintiff's request is now moot since this court has granted defendant's

7

[motion for summary judgment][.] Therefore, this court will grant defendant's [motion to quash the subpoena] served on Newark Beth Israel Medical Center.

This appeal followed.

Our standards of review in this matter are well established. In reviewing a grant of summary judgment, we apply the same standard under Rule 4:46-2(c) that governs the trial court. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 349-50 (2016). We consider the factual record, and reasonable inferences that can be drawn from those facts, "in the light most favorable to the non-moving party" to decide whether the moving party was entitled to judgment as a matter of law. IE Test, LLC v. Carroll, 226 N.J. 166, 184 (2016) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). With regard to the discovery issue, a trial court's decision to quash a subpoena is entitled to a deferential standard of review; therefore, decisions regarding "discovery matters are upheld unless they constitute an abuse of discretion." In re Custodian of Records, Criminal Div. Manager, 214 N.J. 147, 162-63 (2013) (citing Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)).

On appeal, plaintiff raises the same arguments he unsuccessfully presented to Judge Espinales-Maloney. We have considered plaintiff's contentions in light of the record and the applicable legal principles and

conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We are satisfied that Judge Espinales-Maloney properly granted summary judgment to defendant and correctly quashed plaintiff's subpoena seeking defendant's disciplinary records. We therefore affirm substantially for the reasons expressed in the judge's September 3, 2019 written opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0653-19T3